UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
PAUL DAUGEVELO and CHRISTOPHER
GLINTON,

                              Plaintiffs,
v.

RYAN FRIDLICH and PAUL SILVIK,

                              Defendants.
--------------------------------------------------------X

**MEMORANDUM OPINION
AND ORDER**

20-CV-00538 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiffs Paul Daugevelo ("Daugevelo") and Christopher Glinton ("Glinton" and collectively "Plaintiffs") commenced this action on January 21, 2020 with the filing of a Complaint. (Doc. 1). On June 2, 2020, Plaintiffs filed an Amended Complaint (the "AC"). (Doc. 21, "Am. Compl."). Plaintiffs assert two Fourteenth Amendment due process claims for relief against Sheriff's Deputy Ryan Fridlich ("Fridlich") and Sheriff's Detective Sergeant Paul Silvik ("Silvik" and collectively "Defendants") related to an incident at the White Lake Flea Market on July 8, 2018: (1) reputational injury and (2) deprivation of property without adequate process. (*Id.* ¶¶ 58-64).

On July 29, 2020, Defendants served on Plaintiffs their motion to dismiss Plaintiffs' AC pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 26; Doc. 28, "Defs. Br."). On August 11, 2020, Plaintiffs served on Defendants their brief in opposition to Defendants' motion. (Doc. 31, "Pls. Br."). The motion was fully briefed as of August 11, 2020 when Defendants served their reply brief. (Doc. 29, "Reply").

For the reasons set forth below, Defendants' motion is GRANTED IN PART.

1

**BACKGROUND**

The facts, as recited below, are taken from Plaintiffs' AC. Plaintiffs are Pennsylvania residents who operate an antique business. (Am. Compl. ¶¶ 5-7). Fridlich is a Sheriff's Deputy and Slivik is a Sheriff's Detective Sergeant, both of whom are employed by the Sullivan County Sheriff's Department. (*Id.* ¶¶ 8-9).

On July 8, 2018, Plaintiffs arrived at the White Lake Flea Market (the "Flea Market") in White Lake, New York, at approximately 7:00 a.m. to set up two booths from which they would sell antiques. (*Id.* ¶ 16). The Flea Market is frequented by members of the Jewish community who reside near White Lake. (*Id.* ¶ 20). At an unspecified time on July 8, 2018, Daugavelo noticed the arrival of two police cruisers and Defendants exited from those cruisers. (*Id.* ¶¶ 22-23). Defendants approached Plaintiffs' booth and informed Plaintiffs, "we are here to seize your merchandise as stolen merchandise." (*Id.* ¶ 24). Plaintiffs were instructed by the officers that nothing was to be sold and the booth should be closed. (*Id.* ¶ 26). Plaintiffs allege that customers in the area overheard the conversation between Plaintiffs and Defendants. (*Id.* ¶ 25).

Plaintiffs aver that prior to the arrival of Defendants, several people came into Plaintiffs' booth with a concerted focus on an ark cover that was for sale. (*Id.* ¶¶ 29-30). Plaintiffs claim that they had purchased the ark cover from Dan Levinson ("Levinson"), an antiques dealer of Judaica items who "has an excellent reputation for quality religious antiques and is also well-known in the antique community." (*Id.* ¶¶ 17-18).

After Defendants arrived at Plaintiffs' booth and announced that they were there to seize stolen merchandise, Defendants read Plaintiffs their Miranda Rights and escorted Plaintiffs to the police cruisers. (*Id.* ¶¶ 34-35). Plaintiffs were placed in a police vehicle and interviewed by Slavik. (*Id.* ¶ 36). Throughout the arrest and interview process, Plaintiffs allege that members of the

Hasidic sect were constantly taking "embarrassing and humiliating photographs" of Plaintiffs. (*Id.* ¶ 37). Plaintiffs believe that "Defendants were used as a tool of the Hasidic sect in order for the Hasidic sect to secure the coveted ark cover." (*Id.* ¶ 33).

Plaintiffs informed Defendants that none of the property for sale was stolen and that they were lawful owners of the ark cover. (*Id.* ¶¶ 38-40). Plaintiffs were released after the police interviews and directed to pack up the items in their booth and to close the booth for the remainder of the day. (*Id.* ¶¶ 42-43). Certain of Plaintiffs' items, including the ark cover, were seized by Defendants. (*Id.* ¶ 44). After leaving the Flea Market, Plaintiffs received a call from Levinson who notified Plaintiffs that he had been contacted by a member of the Hasidic sect who inquired as to whether Levinson had sold the ark cover to Plaintiffs. (*Id.* ¶¶ 45-46). Levinson allegedly informed Plaintiffs that he told this individual that he had lawfully transferred the ark cover to Plaintiffs. (*Id.* ¶ 46).

Four days after the incident at the Flea Market, on July 12, 2018, Plaintiffs' counsel sent the Sullivan County Task Force documentation demonstrating that the ark cover had been lawfully transferred from Levinson to Plaintiffs and counsel demanded the immediate return of the seized property. (*Id.* ¶ 50). The Sullivan County Sheriff's Department sent Plaintiffs a "Release . . . indicating that the property would be returned following the execution of the Release by Plaintiffs." (*Id.* ¶ 51). Plaintiffs did not sign the release, but nonetheless, on September 5, 2018, the seized property was returned to Plaintiffs. (*Id.* ¶¶ 51, 56).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to consider dismissing a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, a court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of actions." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

Defendants move to dismiss Plaintiffs' AC in its entirety pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiffs' AC includes two separate Fourteenth Amendment due process violation claims for relief. The Court notes at the outset that it is difficult to ascertain Plaintiffs' precise theories of recovery. Defendants, in their memorandum in support of their motion to dismiss, appear to collapse Plaintiffs' two claims for relief into one claim for relief and offer arguments only directed towards dismissal of Plaintiffs' first claim for

relief. Nonetheless, the Court analyzes the sufficiency of Plaintiffs' allegations and the viability of Plaintiffs' claims for relief *seriatim*.

## I. Materials Considered on 12(b)(6) Motion to Dismiss

Before turning to the merits of Plaintiffs' claims, the Court must first address a preliminary issue: the materials the Court will consider on the present motion. Defendants urge this Court to consider exhibits annexed to Michael Davidoff's Declaration (the "Davidoff Declaration"), which was submitted in support of Defendants' motion. (Defs. Br. at 7-8; Doc. 27, Declaration of Michael Davidoff dated July 29, 2020). The exhibits include: (1) a copy of Plaintiffs' AC; (2) an undated document entitled "Sullivan County Sheriff's Office Property Receipt-Return" with a letter from Plaintiffs' counsel, dated July 9, 2020, which states, in relevant part, "Per our discussions on the call today, please find Exhibit 'A' that you long requested attached" (Doc. 27-2); and (3) a copy of an audio recording allegedly taken by Slavik on July 8, 2018 (the "Audio Recording") (Doc. 27-3).[1] Plaintiffs argue that it is improper for the Court to consider the Audio Recording on the present motion. (Pls. Br. at 8-10). The Court agrees.

On a Rule 12(b)(6) motion to dismiss, in addition to considering a complaint, the Court may also consider "any written instrument attached to [the complaint] as an exhibit[,] any statements or documents incorporated in it by reference[,] . . . matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Kalyanaram v. Am. Ass'n of Univ. Professors at New York Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 818 (S.D.N.Y. 2011) ("In deciding the motion to dismiss,

---

[1] A physical disc containing the Audio Recording was sent to the Court's Chambers, as an audio recording cannot be filed via ECF.

'the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiffs' possession or the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken.'" (citing *In re Loral Space & Commc'ns Ltd. Sec. Litig.*, No. 01-CV-4388, 2004 WL 376442, at *2 (S.D.N.Y. Feb. 27, 2004))). Additionally, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers*, 282 F.3d at 153 (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

Here, Exhibit 2 to the Davidoff Declaration (Doc. 27-2) is properly considered on the present motion as it is incorporated into Plaintiffs' AC by reference and relied upon by Plaintiffs in bringing suit. (*See* Am. Compl. ¶ 44 ("Clearly visible on the inventory sheet, attached hereto as Exhibit 'A' is the fact that the officers were from the Sullivan County Sheriff's Department.")).[2] The same cannot be said for Exhibit 3, the Audio Recording. Plaintiffs did not attach the Audio Recording to the AC or reference the Audio Recording therein. Furthermore, there is no indication from Plaintiffs' AC that they had knowledge of the Audio Recording or relied upon it in bringing this action. While Defendants argue that Plaintiffs "had possession of the audio before the Amended Complaint was filed as it was sent to Plaintiffs' attorney in the letter exchange between the attorneys before the Complaint was amended" (Reply at 2), this argument alone (in Defendants' brief) does not provide any basis which permits the Court to consider that the Audio Recording was integral to this AC. The AC is silent as to the existence of an Audio Recording and

---

[2] Despite the plain language of Plaintiffs' AC, no exhibits were attached to the AC. The inventory sheet, attached as Exhibit 2 to the Davidoff Declaration, is undated and enumerates eighteen items which were received by the Sullivan County Sheriff's Department. Among the items listed are seven ark covers. Plaintiffs' AC does not make clear which of these ark covers was the ark cover sold by Levinson which allegedly attracted the attention of patrons at the Flea Market on July 18, 2018.

thus the Court finds it is not integral to the AC. Accordingly, the Audio Recording is not considered on Defendants' motion to dismiss.[3]

## II.  Reputational Injury Claim

Plaintiffs' first claim for relief, brought pursuant to 42 U.S.C. § 1983, asserts a "violation of Plaintiff's [sic] constitutional right to be free from injury to reputation." (Am. Compl. at 11-12).[4] Defendants' brief in support of their motion to dismiss appears to interpret Plaintiffs' claim as a defamation claim under New York State law. (Defs. Br. at 11 (arguing that Plaintiffs' claim is time-barred by New York's one-year statute of limitations); *id*. at 12 (arguing that Plaintiffs have failed to establish special damages, a necessary element of a defamation claim under New York law); *id*. at 14 (arguing that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claim)). Plaintiffs clarified in their opposition brief that their first claim for relief is not a defamation claim under New York State law, but rather a "stigma-plus" claim which asserts a violation of Plaintiffs' Fourteenth Amendment due process rights. (Pls. Br. at 13-15). The Court finds that Plaintiffs' first claim for relief is properly construed as a due process "stigma-plus" claim and further that Plaintiffs' allegations fail to state a claim for relief that is plausible on its face. Thus, Plaintiffs' first claim for relief is dismissed.[5]

A plaintiff can state a "stigma-plus" claim by alleging that he "has suffered a loss of reputation 'coupled with the deprivation of a more tangible interest, such as government

---

[3] While a Court may convert a motion to dismiss into a motion for summary judgment if the motion to dismiss relies on matters outside of the pleadings, *Carter v. Ponte*, No. 17-CV-1830, 2018 WL 4680995, at *3 (S.D.N.Y. Sept. 28, 2018), the Court will not convert Defendants' motion here as discovery is undoubtedly required.

[4] Plaintiffs' AC does not include page numbers and thus the Court refers to page numbers assigned by ECF.

[5] Because the Court finds that Plaintiffs have failed to plead an essential element of a "stigma-plus" claim, the Court does not address Defendants' other arguments advanced in support of dismissal.

employment.'" *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006) (quoting *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004)). Such a claim is referred to as a "stigma-plus" claim because "it involves an 'injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process.'" *Id*. (quoting *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003)); *Emanuele v. Town of Greenville*, 143 F. Supp. 2d 325, 332 (S.D.N.Y. 2001) (holding that a plaintiff may assert a reputational injury claim pursuant to § 1983 by establishing "both that the statements at issue were defamatory and that they deprived [him] of a liberty or property interest." (citing *Siegert v. Gilley*, 500 U.S. 226, 233 (1991))). A claim asserting that one's reputation was injured without any allegation of an accompanying deprivation of a protected liberty or property interest is insufficient because "[g]enerally, defamation is not actionable under Section 1983." *Emanuele*, 143 F. Supp. 2d at 332 (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976))).

Here, Plaintiffs allege that prior to the events giving rise to this dispute they had an "excellent reputation in the antique and art communities" and that that reputation was "forever tarnished and harmed by the actions of the Defendants." (Am. Compl. ¶¶ 7, 62). The harm to their reputation allegedly occurred because: (1) patrons at Plaintiffs' antiques booth heard Defendants say "we are here to seize your merchandise as stolen merchandise" (*id.* ¶ 24); (2) the interaction between Plaintiffs and Defendants "was done publicly and loudly enough so that all in proximity to the Plaintiffs['] booth were privy to the conversation by the law enforcement officers and saw the interaction between law enforcement officers and the Plaintiffs" (*id*. ¶ 25); and (3) while Plaintiffs were being questioned by police, individuals were taking "embarrassing and humiliating photographs" of the Plaintiffs while they were located in the police vehicle" (*id*. ¶ 37).

Even assuming *arguendo* that Plaintiffs adequately alleged that Defendants' statements injured Plaintiffs' reputations and were defamatory, Plaintiffs' AC does not allege the "plus" element—*i.e.* the deprivation of some tangible property interest without due process—which is a necessary element of a "stigma-plus" claim for relief. Plaintiffs' conclusory allegation that their reputation was "forever tarnished" in simply insufficient, as a matter of law, to support a "stigma-plus" claim for relief. *See Emanuele*, 143 F. Supp. 2d at 333 ("A sullied reputation is insufficient for deprivation of a liberty interest." (citing *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994))). Plaintiffs' AC does not include any allegations that enable this Court to plausibly infer that Plaintiffs have suffered a tangible injury as a result of Defendants' allegedly defamatory statements. Accordingly, Plaintiffs' first claim for relief is dismissed.

### III.  Deprivation of Property Claim

Plaintiffs' second claim for relief asserts a Fourteenth Amendment due process violation related to Defendants' seizure of Plaintiffs' property without probable cause. The Due Process Clause of the Fourteenth Amendment provides: "No state shall . . . deprive any person of . . . property without due process of law." To determine if a plaintiff was deprived of property without due process of law, a court must first "identify the property interest involved" and then determine "whether the plaintiff received constitutionally adequate process in the course of the deprivation." *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005) (citing *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 212 (2d Cir. 2003)).

Here, Plaintiffs allege that Defendants seized their property, including the ark cover, despite the fact that Plaintiffs "repeatedly and consistently maintained that they were the true and rightful owners of the ark cover." (Am. Compl. ¶¶ 40, 44). Viewing Plaintiffs' allegations in the light most favorable to them, they allege that Defendants seized their property, at least temporarily,

without affording Plaintiffs constitutionally adequate due process and that the seized property was held by Defendants for approximately two months before it was returned. (*Id.* ¶ 56). Additionally, Plaintiffs allege that the Sullivan County Sheriff's Department attempted to require that Plaintiffs sign a "Release" prior to returning the seized goods, which was improper. (*Id.* ¶¶ 51-52).

While Plaintiffs' allegations are sparse, all that is required to survive a motion to dismiss is "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court finds that Plaintiffs allegations are sufficient to state a claim for relief that they were deprived of their goods without due process of law.

The only argument Defendants advance in support of dismissal of Plaintiffs' second claim for relief is that Plaintiffs consented to Defendants taking their property and thus no due process violation can lie.[6] However, the sole support for Defendants' argument is that the Audio Recording attached as an exhibit to the Davidoff Declaration indicates that "Glinton consent[ed] for the Defendant Deputies to take the questioned items temporarily until the Defendants can sort out the issues." (Defs. Br. at 10). As the Court has already found, *supra*, it is not proper for the Court to consider the Audio Recording on the present motion. Thus, the Audio Recording is not considered and Defendants have put forth no other arguments in support of dismissal of Plaintiffs' second claim for relief. Accordingly, the branch of Defendants' motion seeking dismissal of Plaintiffs' second claim for relief is denied.

---

[6] Defendants reference only Plaintiffs' first claim for relief in the portion of their brief that includes this argument. (Defs. Br. at 9-10). However, this argument appears to the Court to be more properly directed at Plaintiffs' second claim for relief which asserts a due process violation claim based on the deprivation of property and thus is examined here.

## IV. Qualified Immunity

Defendants argue that even if Plaintiffs' claims are not dismissed on Rule 12(b)(6) grounds, Defendants are entitled to qualified immunity. (Defs. Br. at 15-17; Reply at 7-8). While qualified immunity is ordinarily an affirmative defense asserted in an answer, a defendant can properly raise a qualified immunity defense in a pre-answer 12(b)(6) motion to dismiss. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*, 111 F. Supp. 3d 459, 493 (S.D.N.Y. 2015) ("In order for the doctrine of qualified immunity to serve its purpose, the availability of qualified immunity should be decided 'at the earliest possible stage in litigation.'" (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991))). A 12(b)(6) motion based on qualified immunity may be granted if "the facts supporting the defense appear on the face of the complaint." *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (quoting *McKenna*, 386 F.3d at 435-36). A defendant bears the burden of establishing that he is entitled to qualified immunity. *Gardner v. Murphy*, 613 F. App'x 40, 41 (2d Cir. 2015) (citing *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013)). Consequently, when a defendant raises a qualified immunity defense in a 12(b)(6) motion to dismiss, the defendant must accept that "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Hyman*, 630 App'x at 42 (quoting *McKenna*, 386 F.3d at 436).

The doctrine of qualified immunity protects officials from liability for civil damages when, "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official

would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). If an officer's belief that his action does not violate clearly established law is "objectively reasonable," he is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013); *see also Ashcroft*, 563 U.S. at 743 ("[Q]ualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments . . . [and] it protects 'all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))).

Without the benefit of discovery, the Court is not able to determine, based upon a reading of the AC, whether Defendants are entitled to qualified immunity as the facts supporting Defendants' qualified immunity defense do not appear on the face of Plaintiffs' AC. Simply stated, the Court cannot determine with any certainty whether Defendants are shielded by qualified immunity as there are insufficient allegations in the AC to support such a finding. Accordingly, the Court denies Defendants' motion to dismiss on qualified immunity grounds at this juncture.

## CONCLUSION

Defendants' motion to dismiss is GRANTED IN PART. The Court dismisses Plaintiffs' first claim for relief. Plaintiffs' second claim for relief will proceed to discovery. The Court shall hold an Initial Pretrial Conference on January 27, 2021. A Notice of Initial Conference will be separately docketed.

The Clerk of Court is respectfully directed to terminate the pending motion (Doc. 26).

                                                    **SO ORDERED:**

Dated: New York, New York
        December 22, 2020

                                                  Philip M. Halpern
                                                  United States District Judge